## CHARLES CHESLEY *v.* G. L. MATTHEWSON.

### *Contract.   Book Account.*

The plaintiff agreed to let the defendant put one hundred sheep into his pasture for the season at fifty cents per head, and if his pasture should prove to be insufficient for their feed that he would arrange with his father to open his pastures to them, and performed the contract on his part.  The defendant was to have the care of them.  In September the defendant took them out.  The auditor found that the difference in the condition of the sheep when taken out, compared with what it would have been if the pasture had been of sufficient capacity to keep them well, was equal to the price agreed on between the parties.  *Held,* that the plaintiff was entitled to recover the contract price.

BOOK ACCOUNT for pasturing one hundred and one sheep through the summer of 1866, at fifty cents per head.

In relation to said account the auditor finds, that in the early part of May, 1866, the plaintiff called on the defendant for the purpose of renting his pasture, and that the defendant refused to hire it for the reason that he had never seen it.  He told the plaintiff he had some sheep he wished to get pastured, and that he wanted them well pastured, for the reason that he wanted to sell them in the fall, and asked the plaintiff how many he thought the pasture would keep. The plaintiff said he didn't know, but thought it would keep one hundred, and that he would warrant it to keep eighty.  The defendant, at that time, thought a pasture of that size might keep one hundred sheep ; and it was finally agreed that the defendant should turn in one hundred sheep, and if the pasture should prove to be insufficient the plaintiff was to arrange with his father, who owned a pasture adjoining, to let the sheep run in said last named pasture a part of the time.   The defendant turned one hundred and one sheep into the plaintiff's pasture on the 28th day of May, 1866.   The defendant saw the pasture and sheep on the 18th, and again on the 25th day of June, and the appearance of the sheep, at these times, was satisfactory to the defendant.   He saw the sheep again on the 15th day of July when he thought the feed was getting rather short, and that the sheep were " not looking quite so plump as when he last saw them," and so remarked to the plaintiff's father, but made no request to have them

let into the other pasture, he thinking (as he testified) if the feed remained as good as it then was it would answer. The defendant again saw the sheep on the 15th day of September, at which time the feed had become short and the sheep not in so good condition as at the last time he saw them. At this time, September 15th, the defendant said to the plaintiff's father he thought he ought to turn them into the other pasture, and the old gentleman promised to do so "in the course of a week." And, in compliance with said promise, did, within three or four days, let said sheep into the other pasture. On the 22d day of September the defendant took away the lambs (the old sheep then being in the pasture owned by the plaintiff's father,) and on the 24th, two days later, the defendant took all of the sheep to his farm in Lyndon, and the plaintiff's pasture remained unoccupied during the remainder of the season. It was understood between the plaintiff and the defendant that the defendant was to have the oversight and care of the sheep during the season, and he, the defendant, contracted with the father of the plaintiff to salt them, he, the defendant, furnishing the salt for that purpose, and that the plaintiff's father was not the agent of the plaintiff. The plaintiff did not see the pasture or sheep during the time they remained in his pasture; his representations in relation to the pasture were made in good faith. The auditor also finds that the defendant never gave notice to the plaintiff that the feed was getting short or that the sheep were not doing well. And the first that the plaintiff knew of any complaint on the part of the defendant was in October or November, when he demanded payment of the defendant. The auditor finds that the difference in the condition of the sheep when taken out of the pasture, compared with what it would have been if the pasture had been of sufficient capacity to keep them well, was equal to the price agreed on between the parties, said price being fifty cents per sheep, and that the pasture would have kept " well " eighty sheep during the season.

The court, STEELE, J., presiding, at the June Term, 1867, without hearing, rendered judgment, *pro forma*, for the plaintiff for the largest sum, which was the contract price,—to which the defendant excepted.

Benior, Adm'r, *v.* Paquin.

*Belden & Bartlett*, for the defendant.

*T. P. Redfield*, for the plaintiff.

The opinion of the court was delivered by

BARRETT, J.   The plaintiff agreed to let the defendant put a hundred sheep into his pasture for the season at fifty cents per head, and, if his pasture should prove to be not sufficient for their feed, that he would arrange with his father to open his pasture to them. This is the contract under which the plaintiff claims to recover. The report shows that he performed the contract on his part in every particular. It is not true that he was under obligation to exercise any care or watch over the sheep, or to see that they were well kept. He was only to furnish just the pasture designated, with the use of his father's pasture in a specified contingency ; and all this he did without notice from the defendant, or knowledge from any source, that there was any lack of feed for the sheep.

The judgment is affirmed.